IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| LAURIE A. POPKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-711 (GMS) |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

## I.     **INTRODUCTION**

This action arises from the denial of the plaintiff Laurie Popken's ("Popken") claim for

Social Security benefits under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§

401-433, 1381-1383(f).  Popken filed for disability insurance benefits ("DIB") on March 7,

2007, claiming she became disabled on November 5, 2005. (D.I. 5 at 120, 125.)  The Social

Security Administration ("SSA") denied Popken's claims initially and on reconsideration. (*Id.* at

70-71, 74.)  Popken thereafter requested an administrative law judge ("ALJ") rehearing, which

took place on April 14, 2009. (*Id.* at 29-31.)  At the hearing, Popken and an impartial vocational

expert, Tony Malass provided testimony. (*Id.* at 31.)

The ALJ, Melvin Benitz, issued a written decision on June 29, 2009, denying Popken's

benefit claims.  (*Id.* at 13.)  Popken requested a review of the ALJ's decision by the Social

---

[1] Carolyn W. Colvin became the Commissioner of Social Security ("Commissioner") on February 13, 2013, after briefing began.  Although under Federal Rule of Civil Procedure 25, Carolyn W. Colvin should be substituted for Michael J. Astrue, pursuant to 42 U.S.C. § 405(g) no further proceedings are necessary to continue this action.

Security Appeals Council, which denied review on November 4, 2010. (*Id.* at 4.) Popken filed a timely appeal with the court on August 12, 2011. (D.I. 1.) Presently before the court are the parties' cross-motions for summary judgment. (D.I. 9; D.I. 12.) For the reasons that follow, the court will: (1) deny Popken's motion for summary judgment, and (2) grant the Commissioner's motion for summary judgment.

## II.     BACKGROUND

Popken was born on April 21, 1962. (D.I. 5 at 120.) She attended high school and received her diploma. (*Id.* at 32, 177). At the time of her application for DIB on March 7, 2007, Popken was forty-four years old. (*Id.* at 120, 125.) Her alleged disability dates back to November 5, 2005. (*Id.* at 120.) Popken was examined and treated by a number of medical professionals throughout her claim period, but only the ALJ's assessment of the opinions of Drs. Diehl, Leitman, Xing, and Ivins are disputed by the parties. (*See* D.I. 10; D.I. 13.)

### A.  Medical and Employment History

Popken worked as a cafeteria worker for the Brandywine School District from August 1999 to November 2005. (D.I. 5 at 196.) While working and throughout most or all of the relevant claim period, she was obese. (*See, e.g.*, *id.* at 340.) Popken claims that she stopped working as a result of a fall which injured her right knee. (*Id.* at 34-35.) In January 2006, she was diagnosed with osteoarthritis of the right knee and underwent a total right knee replacement. (*Id.* at 350.) An October 2006 MRI of Popken's back showed significant degeneration and disc herniation. (*Id.* at 257-59.) She underwent a laminectomy and discectomy to treat these issues in March 2007. (*Id.* at 309.) Popken testifies to having suffered from irritable bowel syndrome and carpal tunnel syndrome throughout the claim period, but there is no treatment record of these

2

conditions in the medical record.

## B. Expert Opinions

### i. Dr. Diehl

Dr. Kristine Diehl, Popken's primary care physician, treated her for a variety of acute and chronic illnesses including depression, for which she prescribed psychotropic medication. (*See, e.g., id.* at 402-596.) Dr. Diehl noted on February 22, 2007, that Popken had abused pain medications and suffered from withdrawal as a result. (*Id.* at 517.) Despite the withdrawal and Popken's various ailments, Dr. Diehl opined that Popken had an alert mental status and an otherwise normal general outlook, including a normal gait. (*Id.*) While under Dr. Diehl's care for pain medication, Popken obtained several hundred prescription pain pills from multiple other doctors. (*Id.* at 657-771.)

On December 11, 2007, Dr. Diehl completed a physical RFC questionnaire in which she opined that Popken was disabled due to the constant. "5/10" pain Popken had reported. (*Id.* at 626-27.) Dr. Diehl described Popken's various conditions as including severe arthritis, a slow gait, and depression. (*Id.*) She gave Popken a prognosis of "poor" but remarked that Popken could tolerate moderate work stress. (*Id.*) Dr. Diehl noted that emotional factors did not contribute to the severity of Popken's symptoms or functional limitations. (*Id.*) ALJ Benitz accorded Dr. Diehl's opinion little weight in his findings, remarking that Dr. Diehl's treatment notes and Popken's pain reports to her were inconsistent with Dr. Leitman's treatment records. (*Id.* at 25.) The ALJ also considered Dr. Diehl's reports of Popken's drug abuse to cast doubt on Popken's credibility. (*Id.*)

3

## ii.  Dr. Leitman

Dr. Elliot Leitman, an orthopedist, treated Popken for her knee impairments beginning in 2005. (*Id.* at 368-401.) On October 21, 2005, he diagnosed her with osteoarthritis of the right knee and recommended total right knee replacement. (*Id.*) Dr. Leitman's notes following the surgery indicated that Popken's knee was healing well. (*Id.*) Popken reported left knee pain in March 2006, which she attributed to a June 2005 fall from her camper. (*Id.* at 373.) Dr. Leitman diagnosed Popken with left knee pain, probable degenerative meniscus tear, and pre-existing osteoarthritis of the left knee. (*Id.*) In June 2007, Dr. Leitman recommended surgical arthroscopy of Popken's left knee with debridement. (*Id.*) On November 15, 2007, Ms. Popken underwent arthroscopic surgery for her left knee. (*Id.* at 648) Popken continued to report left knee pain after the surgery and received regular injections. (*Id.* at 737-741.) In July 2008, Popken reported that her right knee was doing well. (*Id.*) Dr. Leitman found no effusion, though he diagnosed extensive. patellofemoral subluxation and recommended a patellofemoral arthroplasty. (*Id.*) In September 2008, Popken underwent full left knee arthroplasty and followup physical therapy. (*Id.* at 701-706.) In December 2008, Dr. Leitman recommended that Popken be limited to moderate physical activity. (*Id.* at 749.)

In February 2009, Popken reported to Dr. Leitman that her left knee was completely pain free, though she noted that her right knee bothered her with pain from stiffness when standing up after prolonged sitting. (*Id.* at 734.) Dr. Leitman opined that Popken seemed to have had a good result from the knee replacement surgery. (*Id.*) He found her gait to be normal and her right knee to demonstrate a full range of motion with no evidence of instability, effusion, or infection. (*Id.*) He found her left knee exam to be completely normal. (*Id.*)

4

### iii.    Dr. Xing

Dr. Selina Xing, a pain management specialist, began treating Popken on October 20, 2008, for her complaints of knee and leg pain secondary to low back pain. (*Id.* at 712-14.) Dr. Xing noted that Popken had "trouble ambulating and climbing stairs" but that the pain was relieved with medication. (*Id.*)  Dr. Xing gave Popken a prognosis of "[t]otal disability secondary to ambulation dysfunction." (*Id.*)  She recommended a regimen of pain medications along with a urine drug screen. (*Id.*)  Dr. Xing continued to treat Popken on a monthly basis. (*Id.* at 751-56.)  On November 11, 2008, Dr. Xing diagnosed Popken with lumbar strain secondary to gait dysfunction related to knee pain after Popken complained of right knee pain affecting her back. (*Id.* at 756)  In March 2009, Popken reported to Dr. Xing that the knee pain had subsided, though in April 2009 she claimed it had returned. (*Id.* at 751-52.)  ALJ Benitz accorded Dr. Xing's opinion little weight because of its inconsistency with Dr. Leitman's records, particularly concerning Popken's claimed ambulation dysfunction. (*Id.* at 25.)

### iv.    Dr. Ivins

Dr. Ivins, a psychologist consulting for the SSA, examined Popken on September 5, 2007 and filled out a Psychological Functional Capacities Evaluation Form ("PFCEF"). (*Id.* at 600-03.)  He noted that Popken was tearful and sad throughout the evaluation, having to stop and cry several times. (*Id.* at 600.)  She denied hallucinations. (*Id.*)  Dr. Ivins found her stream of thinking "adequate," and he found her ability to answer questions "good." (*Id.*)  He found no language impairment, suicidal ideation, or delusional thinking. (*Id.*)  Dr. Ivins found Popken's remote memory to be poor, but her recent past memory to be quite good. (*Id.* at 601.)  She stated

that she slept well while taking her medication. (*Id.*) Popken reported strong attention and concentration skills, though she noted that she avoided human contact. (*Id.*)

Dr. Ivins diagnosed Popken with recurrent major depressive disorder and gave her a guarded prognosis. (*Id.*) He found that she had a "moderately severe" degree of impairment restricting her daily activities, her ability to sustain work performance and attendance in a normal work-setting, cope with the pressures of ordinary work, and perform routine, repetitive tasks under ordinary supervision." (*Id.* at 602-03.) "Moderately severe" was defined on the form as "an impairment which seriously affects ability to function." (*Id.* at 603.) ALJ Benitz interpreted this to mean that Dr. Ivins believed Popken would be able to perform simple and routine work. (*Id.* at 21.)

## C.    The ALJ's Decision

On June 29, 2009, ALJ Benitz issued a decision finding Popken not disabled during the claimed period from November 5, 2005, to the date of the decision. (D.I. 5 at 27.) He found that Popken had the severe impairments of degenerative disc disease; disc herniation; status-post lumbar fusion; osteoarthritis and subsequent right knee total replacement and left knee partial arthroplasty; and depression. (*Id.* at 18.) He found that she had the non-severe impairments of obesity, irritable bowel syndrome ("IBS"), and carpal tunnel syndrome. (*Id.* at 19.) ALJ Benitz determined in his residual functional capacity ("RFC") assessment that, with these impairments, Popken could perform sedentary work as defined in 20 C.F.R. 404.1567(a) subject to certain exceptions based on her physical and mental limitations. (*Id.* at 20.) While ALJ Benitz determined Popken was unable to perform any past relevant work, he found in accord with a

6

vocational expert's testimony that Popken could perform one of several jobs which exist in significant numbers in the national economy. (*Id.* at 26.)

## III.   STANDARD OF REVIEW

### A.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Thus, summary judgment is appropriate only if the moving party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *Boyle*, 139 F.3d at 393. A fact is material only if it might affect the outcome of the suit. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* In deciding the motion, the court must construe all facts and inferences in the light most favorable to the non-moving party. *Id.*; *see also Assaf v. Fields*, 178 F.3d 170, 173-74 (3d Cir. 1999).

This standard does not change merely because there are cross-motions for summary judgment. *Appelmans v. Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

7

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968) (citation omitted). "The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party." *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990) (citation omitted).

**B.  Standard of Review**

A reviewing court will only reverse the ALJ's decision if the Commissioner did not apply the proper legal standards or if the ALJ's decision is unsupported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "Where the ALJ's findings of fact are supported by substantial evidence," the court is "bound by those findings, even if . . . [it] would have decided the factual issue differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). "[S]ubstantial evidence . . . means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, substantial evidence "may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). "If there is only a slight preponderance of the evidence on one side or the other, the [Commissioner's] finding should be affirmed." *Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a *de novo* review of the ALJ's decision, nor may it re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986). The inquiry is not whether the reviewing court would have made the same determination, but rather

whether the Commissioner's conclusion was reasonable. *Richardson,* 402 F.2d at 401; *see Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988). ALJ decisions are therefore to be accorded a high level of deference in review. Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence. *Monsour,* 806 F.2d at 1190-91.

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. *Fargnoli,* 247 F.3d at 44, n. 7 (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 63 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.")). "The district court's function is to determine whether the record, *as a whole,* contains substantial evidence to support the Commissioner's findings." *Cefalu v. Barnhart,* 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005) (citing *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir. 1994)). In Social Security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to FED R. CIV. P. 56(c). *See Woody v. Sec'y of the Dep't of Health & Human Serv.,* 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV. DISCUSSION

### A. Applicable Statute and Law

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has promulgated regulations

9

for determining disability by application of a five-step sequential analysis. *See* 20 C.F.R. §

404.1520. The ALJ, the reviewing Appeals Council, and the Commissioner evaluate each case

according to this five-step process until a finding of "disabled" or "not disabled" is obtained. *See*

*id.* at § 404.1520(a). The process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."
2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."
3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 *and* has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled." Otherwise, she will be found "not disabled."
4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."
5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work in the national economy. If she is incapable, a finding of disability will be entered. Conversely, if the claimant can perform other work, she will be found "not disabled."

*See ·Cunningham v. Apfel*, No. 00-693, 2001 WL 1568708, at *4 (D. Del. Dec. 7, 2001)

(paraphrasing the five-step process for determining disability).

The disability determination analysis involves a shifting burden of proof. *See Wallace v.*

*Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps

of the analysis, the burden is on the claimant to prove every element of his or her claim by a

preponderance of the evidence. At step five, however, the burden shifts to the Commissioner to

prove that there is some other kind of substantial gainful employment the claimant is able to

perform. *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000); *see also Kangas v. Bowen,* 823 F.2d

775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983). Substantial

gainful employment is defined as "work that—(a) involves doing significant and productive

physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

When determining whether substantial gainful employment is available, the ALJ is not limited to consideration of the claimant's prior work, but may also consider any other substantial gainful activity which exists in the national economy. *See* 42 U.S.C. § 423 (d)(1)(A), (2)(A); *Heckler v. Campbell,* 461 U.S. 458, 460 (1983).

**B.    The ALJ's Finding of "Not Disabled"**

Undertaking the five-step process, ALJ Benitz found at step one that Popken has not engaged in substantial gainful activity since the alleged onset date. (D.I. 5 at 18.) He found at step two that Popken has several severe impairments and several non-severe impairments. (*Id.* at 19.)    However, ALJ Benitz found in step three that Popken's impairments do not, either singularly or in combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)    While ALJ Benitz found in step four that Popken could not perform her past relevant work as a cafeteria worker, he found in step five that she has the RFC to perform the sedentary work necessary for several forms of substantial gainful activity which exist in the national economy. (*Id.* at 25-26.)    ALJ Benitz therefore concluded that Popken has not, during the relevant dates of consideration, been under a disability as defined by the Act. (*Id.* at 26.)

**C.    Parties' Contentions**

Popken disputes the ALJ's findings under step five.  She argues that ALJ Benitz made several errors in the course of his RFC determination:

> First, the ALJ's reasons for rejecting the opinions of Drs. Xing and Diehl, Ms. Popken's treating physicians, was [sic] not supported by substantial evidence.
> Second, the Commissioner rejected a portion of the opinion

11

of the state agency consultant and gave no reasoning for the rejection of it. The consultant's opinion provided additional limitations that would affect the outcome of Ms. Popken's capacity for work.

Third, the ALJ failed to consider the impact of Ms. Popken's obesity on her ability to work and its effect on her other impairments.

Fourth, the Commissioner erred by failing to consider and evaluate the testimony of George Popken that described the claimant's limitations. The ALJ was required to examine and assess weight to this evidence.

Lastly, as the hypothetical question posed to the VE did not comprehensively describe Mr. [sic] Popken's impairments, it cannot provide support for a finding that there is other work in the national economy that he [sic] can perform.

Since Ms. Popken's entitlement to benefits is clear from this record, this Court should reverse the Commissioner's decision and remand with instructions to award benefits. Alternatively, this case should be remanded to the Commissioner for further proceedings in accordance with applicable law and regulations.

(D.I. 10 at 1-2.)

The Commissioner in response argues that ALJ Benitz's findings at each step were

supported by substantial evidence:

First, Popken's disagreement with the ALJ's reasoning for assigning "little" weight to the medical source statements of Drs. Diehl and Xing is not grounds for asserting legal error....

....

Secondly, and in accordance with the regulations, the ALJ properly considered Dr. Ivins's consultative report....

....

Thirdly, contrary to Popken's assertion of legal error at step two, the ALJ properly found that Popken's obesity was not severe....

....

Fourthly, Popken's assertion that the ALJ failed to consider the testimony of her husband, George, is an inadvertent misrepresentation of the ALJ's decision ....

....

Lastly, Popken's assertion that the ALJ's finding at step five of the sequential evaluation process was based upon an

12

incomplete hypothetical question is also meritless....

(D.I. 13 at 12-19.)

Popken mischaracterizes ALJ Benitz's assessment of the medical opinions and testimonies, and she mistakes the level of deference the ALJ is required to accord these opinions. Contrary to Popken's allegations, ALJ Benitz explained the level of weight he afforded each opinion and made no legal error in formulating the RFC assessment. Popken in effect asks this court to undertake an inappropriate *de novo* review of the ALJ's findings on the record by re-weighing the evidence in her favor. Because, as the Commissioner contends, the ALJ's findings are supported by substantial evidence in the record—evidence which a reasonable mind might accept as adequate to support his conclusion—this court will not overrule those findings.

## D. Weight Given to Medical Opinions

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence on record. *Fargnoli*, 247 F.3d at 43. The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled. *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

It is error, however, to apply controlling weight to an opinion merely because it comes from a treating source if it is not well-supported by the medical evidence or is inconsistent with other substantial evidence—medical or lay—in the record. SSR 96-2P, 1996 WL 374188, at *5

(S.S.A. July 2, 1996). If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports," and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. A statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a legal finding that is dispositive of the case. *See* 20 C.F.R. § 416.927(d). Only the ALJ can make a disability determination.

If a medical source's opinion is not given controlling weight, it may still be given some weight based on these factors: (1) whether the source has examined the claimant; (2) whether the source has treated the patient, and the length, nature, and extent of the treating relationship; (3) the degree to which the source has presented relevant evidence to support the opinion; (4) the degree to which the source's opinion is consistent with the record as a whole; (5) whether the source specializes in the relevant medical area; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). If a treating source's opinion is not given controlling weight, the ALJ must explain in the decision his reasons for not doing so and the reasons for which he grants weight to other sources. 20 C.F.R. §§ 404.1527(c)(2), 404.1527 (e)(2)(i) (2012); *see also* SSR 96-2P at *5.

Popken asserts that "[t]he ALJ wrongfully rejected the opinions of Ms. Popken's treating physicians, Dr. Selina Xing and Dr. Kristine Diehl [sic] and failed to provide a detailed explanation for the rejection" in that he "provided only a one sentence explanation for each physician." (D.I. 10 at 18.) Popken, however, cites no legal precedent to support the proposition that an ALJ's explanation for not according a treating source controlling weight must be of any particular length. Furthermore, as the Commissioner mentions, the Third Circuit has noted that

14

"[a] written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence . . . . Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995) and *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

ALJ Benitz did not outright reject Dr. Xing and Dr. Diehl's opinions but accorded them little weight because of their inconsistency with other evidence of record. (D.I. 5 at 25.) The ALJ described these inconsistencies and explained his reasons for according greater weight to other medical opinions of record. (*Id.*)

i. . **Dr. Xing's Opinion**

ALJ Benitz properly accorded Dr. Xing's opinion "little weight" and explained his reasons for not according it controlling weight. (*Id.*) Dr. Xing stated that Popken was disabled due to ambulation dysfunction. (*Id.*) ALJ Benitz gave this opinion little weight because of contradictory evidence in Dr. Leitman's records. (*Id.*) Those records did not indicate that Popken had an abnormal gait except immediately before and after her knee surgeries. (*Id.* at 734-50 ("[o]n examination, [Popken's] gait is normal.").) ALJ Benitz accorded Dr. Leitman's opinion more weight than Dr. Xing's, albeit while noting that Dr. Leitman did not take into consideration Popken's back problem. (*Id.* at 25.)

ALJ Benitz could perhaps have provided more detail as to why he gave precedence to Dr. Leitman's opinion over Dr. Xing's. He seems, however, to have reasonably found Dr. Leitman's opinion deserving of greater weight for at least several of the six factors of 20 C.F.R. § 404.1527(c). ALJ Benitz could reasonably have determined Dr. Xing's account was less

consistent with the record as a whole. He could have reasonably found Dr. Xing's medical specialty of pain management less relevant to the determination than Dr. Leitman's specialty of orthopedic surgery. The ALJ could also have considered relevant, as the Commissioner notes, the fact that Dr. Xing's finding of ambulation dysfunction was made three years after Popken's alleged onset date. (D.I. 13 at 4.) In any case, given the inconsistency of the medical opinions, ALJ Benitz's decision to assign little weight to Dr. Xing's opinion was supported by substantial evidence of record. If he erred by failing to adequately explain his reasons for resolving the inconsistency in favor of Dr. Leitman's opinion, this error is not dispositive.

### ii.    Dr. Diehl's Opinion

Popken also accuses ALJ Benitz of having wrongfully rejected Dr. Diehl's opinion. (D.I. 10 at 18.) In actuality, ALJ Benitz considered Dr. Diehl's opinion and accorded it little weight. (D.I. 5 at 25.) He found that, like Dr. Xing's opinion, Dr. Diehl's treatment notes were inconsistent with Dr. Leitman's treatment records. (*Id.*) ALJ Benitz reasonably accorded Dr. Leitman's records more weight than Dr. Diehl's because Dr. Diehl's disability assessment was based only on Popken's subjective pain complaints. (*Id.*) ALJ Benitz noted that Popken's pain reports were inconsistent throughout the record and among the accounts of Drs. Xing, Sugarman, and Leitman. (*Id.* at 24-25.) Popken used these inconsistent reports to obtain hundreds of additional pain pills from multiple doctors. (*Id.* at 25.) The ALJ reasonably determined because of this behavior that Popken's credibility was doubtful, and he accordingly gave more weight to Dr. Leitman's records than to Dr. Diehl's opinion.

### iii.    Dr. Ivins's Opinion

16

Popken argues that ALJ Benitz wrongly rejected Dr. Ivins's opinion and "completely ignored Dr. Ivins' [sic] PFCEF." (D.I. 10 at 25.) ALJ Benitz, however, considered Dr. Ivins's assessment, finding it on the whole consistent with Popken's ability to perform simple and routine work. (D.I. 5 at 21, 600-603.) Popken argues that "[t]he ALJ erred in failing expressly to address all of Dr. Ivins' [sic] opinion" for the RFC assessment, but she offers no legal precedent to support this contention. (D.I. 10 at 27.) It is true that the ALJ "must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [the claimant is] disabled." 20 C.F.R. § 404.1527(e)(2)(i). The ALJ, however, is "not bound by any findings made by State agency medical or psychological consultants . . . ." *Id.* "The findings of fact made by state agency medical consultants must be treated as expert opinion evidence of nonexamining sources . . . . An ALJ may not ignore these opinions and must explain the weight given them." *Neal v. Comm'r of Soc. Sec.*, 2003 WL 340789, at *979 (3d Cir. Feb. 10, 2003).

Popken argues that "no rationale whatsoever was given for the rejection of Dr. Ivins' PFCEF" and that "[t]his error was not harmless because consideration of Dr. Ivins' [sic] opinion affected whether additional restrictions should have been included in the [RFC] assessment, thereby potentially altering the disability determination." (D.I. 10 at 25.) Popken correctly asserts that ALJ Benitz erred when he "wrongfully stated that Dr. Ivins believed that Ms. Popken was capable of simple, routine work." (*Id.*; D.I. 5 at 21 ("Dr. Ivins . . . stated she would be able to perform simple and routine work.").) Dr. Ivins in fact opined in his PFCEF that Popkens had a "moderately severe" degree of impairment restricting her ability to perform daily activities; to sustain work performance and attendance in a normal work-setting; to cope with the pressures of

17

ordinary work; and to perform routine, repetitive tasks under ordinary supervision. (D.I. 5 at 600-03.) "Moderately severe" was defined on this form as "an impairment which seriously affects ability to function." (*Id.*)

The ALJ's error in misinterpreting Dr. Ivins's opinion, however, does not in itself merit remand. The Commissioner correctly notes that a function-by-function analysis of a medical source's statements is unnecessary where a claimant's impairments do not rise to the level necessary to establish disability. *Bencivengo v. Apfel*, 2000 WL 875684, at \*3 (E.D. Pa. June 2000), *aff'd*, *Bencivengo v. Apfel*, 2000 WL 1929759 (3d Cir. Dec. 19, 2000); (D.I. 13 at 15-16.) While the ALJ did not explicitly address each of Dr. Ivins's functional ratings, he incorporated restrictions compatible with Dr. Ivins's opinion into his own function-by-function RFC assessment. (D.I. 5 at 20-25.) Furthermore, ALJ Benitz's rejection of portions of Dr. Ivins's opinion was justified by the inconsistency of Dr. Ivins's findings with the other medical evidence of record. Though ALJ Benitz erred in failing to fully explain his reasons for that rejection, the error is not dispositive. He could still reasonably have found Popken disabled based on the same substantial evidence of record.

## E. Popken's Obesity

Popken argues that the ALJ erred in failing to consider her obesity for the purposes of the RFC and in declining to find Popken's obesity a severe impairment on her ability to work at a sedentary level. (D.I. 10 at 28.) These two claims are contradictory. In advancing the latter Popken concedes that ALJ Benitz did consider her obesity, though he found that "even while she worked . . . . [o]besity seem[ed] to cause only a minimal effect on her ability to perform work-related activity." (D.I. 5 at 19.) As the Commissioner notes, "to the extent that Popken's weight

18

may have potentially affected her knee and back impairments, the ALJ adequately accommodated Popken by finding that she was limited to work at the sedentary level of exertion that allowed for a sit-stand option and no stair climbing." (D.I. 13 at 17; D.I. 5 at 20.)

ALJ Benitz was reasonable in declining to find Popken's obesity a severe impairment on her ability to work at this level. The evidence of record demonstrated Popken's ability to work and maintain other daily activities despite her obesity. (D.I. 5 at 19.) ALJ Benitz perhaps should have addressed Dr. Michael Borek's comments about Popken's obesity, but he evidently took Dr. Borek's opinion into consideration when he adopted similar exertional restrictions. (*Id.* at 252-56; *see id.* at 20-25.) Because ALJ Benitz's impairment assessment regarding Popken's weight was supported by substantial evidence which a reasonable mind might accept as adequate to support his conclusion, it does not merit remand.

## F.   George Popken's Testimony

Popken argues that ALJ Benitz erred in providing no explanation as to why he disregarded George Popken's testimony. As authority Popken cites SSR 96-7p's requirement that

> [i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186, at *1 (S.S.A July 2, 1996). Popken notes that "the ALJ must also consider and weigh all of the non-medical evidence before him." *Burnett v. Comm'r of Soc. Sec. Admin.*, 2000 WL 1025673, at *122 (3d Cir. 2000).

19

Unlike the ALJ in *Burnett*, however, ALJ Benitz took Mr. Popkens's testimony into consideration. (*See* D.I. 5 at 24.) ALJ Benitz formulated an RFC consistent with Mr. Popkens's account of his wife's depression and social limitations. (*Id.* at 20.) While ALJ Benitz could have been more explicit in rejecting Mr. Popkens's specific opinion as to his wife's inability to work, he clearly explained his reasoning for finding this opinion inconsistent with the other evidence of record. (*See, e.g., id.* ("The undersigned finds that the objective medical evidence does not support the degree of limitation alleged by the claimant.").) ALJ Benitz did not err in making this reasonable conclusion.

## G. Other Work in the National Economy

Popken argues that the Commissioner failed to establish that there is other work in the national economy that Popken can perform because the ALJ's hypothetical question was deficient. (D.I. 10 at 34.) "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)). Popken contends that the hypothetical was deficient because the ALJ did not comprehensively describe Ms. Popken's limitations. (*Id.*) However, she gives no indication as to what limitations the ALJ did not "comprehensively" describe. Furthermore, the *Chrupcala* court precedent Popken cites does not support the proposition that an ALJ's hypothetical must meet a specific level of "comprehensiveness" in its description of each impairment listed. The hypothetical merely must "reflect *all* of a claimant's impairments that are supported by the

20

record." *Chrupcala*, 829 F.2d 1276 (emphasis added). ALJ Benitz's hypothetical question was not deficient in that it reflected all of Popken's impairments that are supported by the record.

The ALJ, therefore, acted reasonably in formulating his hypothetical question to the vocational expert. He committed no error of law meriting remand in this assessment or any other. With due consideration given to the parties' arguments and submissions, and the applicable law, the court finds that ALJ Benitz's disability determination was properly supported by substantial evidence.

## V. CONCLUSION

ALJ Benitz's findings were supported by evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 F.2d at 401. Thus, the court grants the Commissioner's motion for summary judgment and denies Popken's motion for summary judgment.

Dated: October  9  , 2014

UNITED STATES DISTRICT JUDGE

21